Filed 4/17/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H046928 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. CR16712D) |
| v. | |
| JOHN LEWIS DRAYTON, | |
| Defendant and Appellant. | |

Senate Bill No. 1437, which took effect on January 1, 2019, restricted the circumstances under which a person can be liable for felony murder. It also enacted Penal Code section 1170.95,[1] which allows an individual who was previously convicted of felony murder to petition to have his or her murder conviction vacated and to be resentenced. In this appeal, we consider how the trial court should assess whether a petitioner has made a prima facie showing of entitlement to relief under section 1170.95, subdivision (c), such that it must issue an order to show cause. We conclude the trial court should accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law. If, accepting the petitioner's asserted facts as true, he or she meets the requirements for relief listed in section 1170.95, subdivision (a), then the trial court must issue an order to show cause. In assessing the petitioner's prima

_____

[1] Unspecified statutory references are to the Penal Code.

facie showing, the trial court should not weigh evidence or make credibility determinations.

Appellant John Lewis Drayton appeals from the trial court's summary denial of his petition filed pursuant to section 1170.95 to vacate his 1992 murder conviction and resentence him. He contends, and the Attorney General concurs, that the trial court failed to follow the procedural requirements of the statute. We agree, reverse the trial court's order, and remand the matter with directions to issue an order to show cause under section 1179.95, subdivision (c) and hold a hearing pursuant to section 1170.95, subdivision (d).

## I. FACTS AND PROCEDURAL BACKGROUND

On June 14, 1991, Mr. and Mrs. Ward and their teenage daughter, who were asleep at their residence in Salinas, were woken in the middle of the night.[2] They discovered four men, one of whom was Drayton, inside their house. Two of the men were armed. The men asked where the safe was. One of the men told the teenage daughter he was going to rape her, and he placed a firearm inside her vagina. Drayton told the man who threatened to rape the girl not to do it.

Drayton had a gun and held Mrs. Ward down on the floor during the robbery with his foot placed in the middle of her back. Drayton hit Mrs. Ward in the head with his gun. The gun "grazed [her]" and did not hurt her. Two of the other men shot and killed Mr. Ward. The robbery lasted approximately 48 minutes. Drayton left the Ward residence with the other perpetrators without seeking any help for the Wards. As the men were leaving, Drayton told Mrs. Ward that she should wait 15 minutes before doing anything. Drayton did not shoot Mr. Ward, threaten to rape the Wards' daughter, or place the gun inside her vagina. Drayton turned himself into the police the next day.

---

[2] Because Drayton was convicted by plea rather than trial, these facts are taken from his preliminary hearing.

2

In 1991, Drayton and three codefendants were charged by information with murder (§ 187; count 1), three counts of robbery (§ 212.5; counts 2-4), burglary (§459; count 5), two counts of assault with a firearm (§ 245, subd. (a)(2); counts 6-7), penetration with a foreign object (§ 289, subd. (a); count 8), and conspiracy to commit robbery (§§ 182 & 212.5; count 9). The information also alleged that Drayton personally used a firearm in the commission of the offenses (§§ 1203.06, subd. (a)(1), 12022.5). In connection with the murder charge, the information alleged three special circumstances. (§ 190.2, subd. (17) (i), (vii), (xi).)

On March 3, 1992, Drayton was convicted by guilty plea of murder (§ 187) and admitted an enhancement for personal use of a firearm (§§ 1203.06, subd. (a)(1), 12022.5). In connection with his guilty plea, Drayton admitted that, on June 14, 1991, he "entered [the] Ward[s'] [r]esidence with intent to commit theft and a human being was killed," and he "had a 32 cal[iber] pistol in his possession."

The probation report filed in connection with Drayton's sentencing indicates that Drayton's sole prior conviction was a misdemeanor violation of section 484, and he "ha[d] no reported history of violence." The probation report states, "Mr. Drayton claims that he tried to stop his counterparts, but eventually 'fell in with them.' If there is any truth in his claims, he is now learning the hard way the cost of being a follower." A report prepared by a clinical psychologist prior to sentencing states that Drayton told the psychologist that he did not participate in the planning of the robbery and tried to stop the others from doing it, leading one of the other men to point a gun at Drayton and tell him to " 'shut up.' " He also told one of the men not to rape the Wards' daughter. On March 26, 1992, Drayton was sentenced to 29 years to life imprisonment.

In January 2019, Drayton filed on his own behalf a petition for resentencing pursuant to section 1170.95. In the petition, Drayton filed a declaration in which he checked a number of pre-printed boxes that collectively indicated he was eligible for resentencing pursuant to section 1170.95, subdivision (d)(2). Among other assertions,

Drayton declared that he "was not a major participant in the felony or [he] did not act with reckless indifference to human life during the course of the crime or felony." The trial court appointed counsel for Drayton.[3]

On March 18, 2019, the Monterey County District Attorney's Office (district attorney) filed an opposition to Drayton's petition to recall his sentence. The district attorney acknowledged that Drayton was neither the actual killer of Mr. Ward, nor had he been found to have intentionally aided and abetted the murder. The district attorney implicitly acknowledged that Drayton had been convicted of murder on a theory of felony murder.

Although individuals convicted of murder on a felony-murder theory are potentially eligible for relief under section 1170.95, the district attorney argued that Drayton's murder conviction should not be vacated. The district attorney contended Drayton could still be convicted of murder as a "major participant in the underlying felonies of robbery and burglary" who showed reckless indifference to human life under the principles set out by the California Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*).

The district attorney acknowledged that the record was "unclear" about Drayton's role in planning the robbery but stated it was undisputed that Drayton went to the Ward home, participated in the robbery, and pointed a gun at Mrs. Ward. The district attorney argued these factors were enough to make Drayton a "major participant." In addition, the district attorney contended that Drayton acted with reckless indifference to human life because, among other factors, he was present at the crime scene, brought his gun to the crime, and did not assist Mr. Ward after he had been shot. The district attorney asserted that, because Drayton "is culpable under the new law for committing felony murder his

---

[3] The precise date on which the trial court appointed counsel for Drayton is not clear from the record, but initial appointment of counsel occurred prior to February 22, 2019.

4

petition must be denied."[4]  The district attorney attached to the opposition the transcript from Drayton's preliminary hearing, the information, the minute orders for the change of plea and sentencing hearings, and Drayton's probation report.

On March 27, 2019, Drayton, represented by counsel, filed a response to the district attorney's opposition to his petition for resentencing.  Drayton argued that the trial court should issue an order to show cause and conduct a hearing "where the evidence will show whether [Drayton] acted with reckless indifference to human life" (some capitalization omitted).

Drayton argued there was a prima facie case that he did not act with reckless indifference to human life during the robbery because he never fired his gun, and he tried to stop the robbery but was afraid because one of the other coperpetrators pointed a gun at him.[5]  Drayton had a firearm that evening for personal protection based on a prior incident and not to perpetrate the robbery.  Although Drayton hit Mrs. Ward with the gun, he did not injure her.

Drayton argued that, by his actions, he prevented the killing of Mrs. Ward and the rape of her daughter.  Drayton also asserted that before the evening of the crime he had not met the coperpetrator who planned the robbery and killed Mr. Ward, and Drayton was not aware of the man's propensity to violence.  In addition, Drayton voluntarily surrendered to the police the next day.  Drayton asserted that, "while this was a horrible nightmare the family went through, [Drayton] took the little steps he could to protect and minimize the danger to Ms. Ward and [her daughter].  He did not act with a reckless

---

[4] The district attorney also argued that Senate Bill No. 1437 was unconstitutional, but the trial court did not reach that question, and it is not at issue in this appeal.

[5] Although Drayton's petition asserted he was not a major participant in the felony "or" he did not act with reckless indifference to human life, his response to the district attorney's opposition contended only that he did not act with reckless indifference to human life.

5

indifference to human life. In fact, without the efforts [Drayton] took this may have turned out to be a multiple homicide case."

On May 17, 2019, the trial court held a hearing on Drayton's petition and denied it without hearing argument or taking evidence. In its oral ruling the trial court stated, "The court agrees with the People's position that petitioner is not eligible for resentencing. . . . [¶] The facts of this case are particularly egregious. Petitioner and other armed co-conspirators or individuals entered an inhabited residence in the middle of the night with the intention of stealing money from a safe. [¶] The occupants, Mr. and Mrs. Ward and their 17-year-old daughter, were inside. Mr. and Mrs. Ward were in bed in the master bedroom when confronted by two of the individuals and ordered onto the floor. One of the individuals put a gun in Mr. Ward's mouth demanding to know the location of the safe. The couple's 17-year-old daughter was brought into the master bedroom. [¶] Petitioner, who had entered the residence also with a firearm, hit Mrs. Ward on the head with the firearm, placed his foot on her back, pinning her to the floor. Ordered her not to move, restrained her in that position for approximately 20 minutes. [¶] During this home invasion or burglary/robbery, a gun was placed in the vagina of the 17-year-old girl apparently in an effort to get Mr. Ward to reveal the location of the safe. One individual also threatened to rape the 17-year-old girl in front her parents. [¶] Mr. Ward was taken into a closet, presumably in search of this safe. A struggle ensued, and he was shot and killed. [¶] The armed individuals were inside the residence approximately 48 minutes. [¶] Petitioner pleaded guilty to first degree murder, admitted an enhancement for personal use of a firearm. [¶] This court finds that petitioner was a major participant in the underlying felony, both the burglary and the robbery. Additionally, the court further finds that he acted with reckless indifference to human life, which I think is blatantly apparent by his conduct, being armed and his participation in this event, as well as the conduct of his co-conspirators, the other individuals. [¶] Petitioner would be eligible to

6

be charged with felony murder under the current state of the law. Petitioner has failed to state a prima facie showing for release. The petition is respectfully denied."

Drayton appeals the trial court's summary denial of his petition.

## II. DISCUSSION

Drayton and the Attorney General agree the trial court erred in finding that Drayton had not made a prima facie case for relief under section 1170.95 and in not issuing an order to show cause. In arguing the trial court used the wrong standard when assessing whether he had established a prima facie case, Drayton asserts that there is "room for debate" whether he acted with reckless indifference to human life, which is "all that was required to be established" for the order to show cause to issue.

With respect to the showing required under section 1170.95, subdivision (c), the Attorney General states, "[w]here, as here, petitioner has averred facts, which if true, render him eligible for resentencing and the record does not indisputably show petitioner is ineligible, an order to show [cause] must issue, whereupon the parties litigate the question of his eligibility at an evidentiary hearing." For the reasons explained below, we largely agree with the Attorney General's position.

### A. *Redefinition of Felony Murder by Senate Bill No. 1437*

Senate Bill No. 1437, which went into effect on January 1, 2019, amended section 189 to limit the scope of liability for murder on a felony-murder theory. (*People v. Turner* (2020) 45 Cal.App.5th 428, 431.) With respect to felony murder and as applicable to Drayton, section 189, subdivision (a) states "All murder . . . that is committed in the perpetration of, or attempt to perpetrate, . . . robbery, [or] burglary . . . is murder of the first degree." However, section 189, subdivision (e)—the new provision added by Senate Bill No. 1437—limits liability for felony murder to persons for whom "one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission

7

of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (See *People v. Flores* (2020) 44 Cal.App.5th 985, 991–992 (*Flores*).)

There is no dispute that Drayton was neither the actual killer of Mr. Ward nor was convicted on the theory that he had the intent to kill Mr. Ward.  Therefore, Drayton's liability for murder following the passage of Senate Bill No. 1437 turns on whether he "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e).) Although Drayton does not challenge that he was a major participant in the robbery, he maintains he did not act with reckless indifference to human life.

Individuals like Drayton, who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019, may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court. This petition process was also created by Senate Bill No. 1437 and is codified at section 1170.95.

B.  *Section 1170.95*

1.  Overview

Section 1170.95 is divided into seven subdivisions.  Pursuant to subdivision (a) only individuals who meet three conditions are eligible for relief:  (1) the person must have been charged with murder "under a theory of felony murder or murder under the natural and probable consequences doctrine," (2) convicted of first or second degree murder, and (3) can no longer be convicted of first or second degree murder "because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a) (hereafter section 1170.95(a).)

Subdivision (b) describes where and how the petition must be filed and specifies its required content.  The petition must include a declaration the petitioner is eligible for

8

relief according to the criteria set out in subdivision (a), provide the case number and year of his or her conviction, and indicate whether he or she is requesting appointment of counsel. (§ 1170.95, subd. (b) (hereafter section 1170.95(b).) If the filed petition is missing any of this information "and cannot be readily ascertained by the court, the court may deny the petition without prejudice." (§ 1170.95, subd. (b)(2) (hereafter section 1170.95(b)(2).)

Subdivision (c), which is the portion of section 1170.95 directly at issue in this appeal, describes the trial court's review of the petition. It states, "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c) (hereafter section 1170.95(c).)

Subdivision (d) describes the timing and standard of proof for the hearing the trial court must conduct if it issues an order to show cause and the parties have not stipulated to resentencing. It states, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).)

Subdivision (e) describes how, if the petitioner is entitled to relief, a "generically" charged murder conviction "shall be redesignated." (§ 1170.95, subd. (e).) Subdivision (f) is a saving clause, and subdivision (g) addresses custody credits and parole. (§ 1170.95, subds. (f)-(g).)

    2.  <u>Trial Court's Review of the Petition and the "Prima Facie Showing"</u>

Section 1170.95 provides for multiple reviews of a petition by the trial court. Under subdivision (b)(2), a trial court may deny a petition without prejudice if the petition lacks any of the information required by subdivision (b)(1). (§ 1170.95(b)(2).) In this "initial review," the trial court "determines the facial sufficiency of the petition." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 327–328 (*Verdugo*), review granted Mar. 18, 2020, S260493.)

Section 1170.95(c) contemplates a more substantive review by the trial court, although it provides little detail about the applicable procedure. Section 1170.95(c) provides "[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95(c).) Section 1170.95(c) does not further define "prima facie showing" and does not specify when, in relationship to the trial court's consideration of the prima facie showing, the trial court should appoint counsel.

The trial court here appointed counsel for Drayton shortly after he filed his petition, so Drayton's appeal does not raise the question—currently under review by the California Supreme Court—when the duty to appoint counsel arises. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128 (*Lewis*), review granted Mar. 18, 2020, S260598

[limiting review to two questions: "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? [and] (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)?"].)

Section 1170.95(c) twice uses the phrase "prima facie showing." Courts of Appeal have inferred from the structure of the provision that section 1170.95(c) contemplates two separate assessments by the trial court of a prima facie showing: one focused on "eligibility" for relief and the second on "entitlement" to relief. As the Second District Court Appeal stated in *Verdugo*, "[s]ubdivision (c) []prescribes two [] court reviews before an order to show cause may issue, one made before any briefing to determine whether the petitioner has made a prima facie showing he or she falls within section 1170.95—that is, that the petitioner may be eligible for relief—and a second after briefing by both sides to determine whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 328; see also *Lewis*, *supra*, 43 Cal.App.5th at p. 1140 ["We construe the requirement to appoint counsel as arising in accordance with the sequence of actions described in section 1170.95 subdivision (c); that is, after the court determines that the petitioner has made a prima facie showing that petitioner 'falls within the provisions' of the statute, and before the submission of written briefs and the court's determination whether petitioner has made 'a prima facie showing that he or she is entitled to relief.' "].)

By its text, section 1170.95(c) thus requires the trial court to make two assessments. The first is whether the petitioner has made a prima facie showing of *eligibility for* relief. A petitioner is eligible for relief if he or she makes a prima facie showing of the three criteria listed in section 1170.95(a)—namely he or she (1) was charged with murder "under a theory of felony murder or murder under the natural and probable consequences doctrine," (2) was convicted of first or second degree murder, and (3) can no longer be convicted of first or second degree murder "because of changes to

11

Section 188 or 189 made effective January 1, 2019." (§ 1170.95(a)); *Verdugo*, *supra*, 44 Cal.App.5th at p. 329; see also § 1170.95, subd. (b)(1)(A) [stating the petition must include a declaration by the petitioner that "he or she is eligible for relief under this section, based on all the requirements of subdivision (a)"].)  For example, Courts of Appeal have affirmed the trial court's summary denial of petitions based on a finding that petitioner could not make a prima facie showing of eligibility where the petitioner was convicted of a crimes not listed in section 1170.95(a), such as manslaughter.  (E.g., *Flores*, *supra*, 44 Cal.App.5th at pp. 990, 993.)[6]

If the trial court determines a petitioner has made a prima facie showing of eligibility for relief, the court proceeds to the "second" inquiry into the prima facie showing under section 1170.95(c).  (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330.)  In this second step, the trial considers whether the petitioner has made a prima facie showing of *entitlement to* (rather than eligibility for) relief.  The key question raised by this appeal is whether the trial court here erred in its finding that Drayton had not made a prima facie showing of entitlement to relief.  Therefore, we must consider the meaning under section

---

[6] Some Courts of Appeal have also affirmed the summary denial, without appointment of counsel, of petitions on the basis of substantive review of documents, such as jury instructions, contained in the trial record.  (See e.g., *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410 [upholding summary denial where the jury verdict necessarily encompassed a jury finding that the petitioner was the " 'actual killer' "]; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 332333 [upholding summary denial where the record of conviction, as interpreted in a prior opinion by the Court of Appeal, established that petitioner "had acted with express malice and, therefore, he was ineligible for relief under section 1170.95."].)  The California Supreme Court is currently considering whether trial courts may review the record of conviction in assessing the prima facie showing of eligibility for relief.  (See *Lewis*, *supra*, 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.)  Because there is no dispute Drayton made a prima facie showing of eligibility for relief, we express no opinion whether it is appropriate for the trial court to substantively analyze documents from the trial court record rather than using them solely to ascertain basic facts, such as the crime of conviction, when assessing the petition's prima facie showing of eligibility under section 1170.95(c).

1170.95(c) of a "prima facie showing that [the petitioner] is entitled to relief."
(§ 1170.95(c).)

In so doing, "[w]e apply well-settled principles of statutory construction. Our task is to discern the Legislature's intent. The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190; see also *People v. Arias* (2008) 45 Cal.4th 169, 177.)

As an initial matter, we observe that it is not the meaning of "prima facie showing" itself that is ambiguous. "A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851; see also Black's Law Dictionary (11th ed. 2019) [defining a "prima facie case" as "[a] party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor"].) However, section 1170.95(c) is ambiguous in that the text does not set out the procedure the trial court should employ when evaluating the prima facie showing of entitlement to relief. The statute's legislative history is similarly silent on the issue.[7]

At least one Court of Appeal has looked to habeas corpus procedures for guidance. In *Verdugo*, the Second District stated "[t]he nature and scope of section 1170.95,

---

[7] The requirement in section 1170.95(c) of a "prima facie showing" was added by the Assembly to the final version of Senate Bill No. 1437. (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 331–332.) A report from the Senate Rules Committee notes that

13

subdivision (c)'s second prima facie review, made following a round of briefing by the prosecutor and counsel for petitioner, is equivalent to the familiar decisionmaking process before issuance of an order to show cause in habeas corpus proceedings, which typically follows an informal response to the habeas corpus petition by the Attorney General and a reply to the informal response by the petitioner. (See Cal. Rules of Court, rule 4.551(b).)" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 328.)

We agree that, at least with respect to the prima facie showing under section 1170.95(c), habeas corpus procedures provide a suitable analogy. It is a maxim of statutory construction that " ' "similar statutes should be construed in light of one another." ' " (*People v. Tran* (2015) 61 Cal.4th 1160, 1167–1168.) Petitions for habeas corpus often seek postconviction relief (*In re Clark* (1993) 5 Cal.4th 750, 763–764), which is section 1170.95's exclusive focus.

The availability of the writ of habeas corpus derives from both the United States and California Constitutions. (U.S. Const., art. I, § 9, cl. 2; Cal. Const., art. I, § 11.) In California, "availability of the writ of habeas corpus is implemented by Penal Code section 1473, subdivision (a), which provides: 'Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint.' " (*People v. Villa* (2009) 45 Cal.4th 1063, 1068, italics omitted.) Although the phrase "prima facie showing" does not appear in the California statutes implementing habeas corpus relief (see §§ 1473 et seq.), the California Supreme Court has used the phrase when describing when a court must issue an order to show cause: " '[I]f a petition for habeas corpus

amendments by the Assembly "clarify the resentencing provisions to make clear that petitioner has the burden to make a prima facie case that he or she is entitled to relief" but does not provide any further explanation of the change. (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as amended Aug. 20, 2018.) We have been unable to locate any legislative history for section 1170.95 that further addresses the legislative intent behind the "prima facie showing" language in section 1170.95(c).

makes a prima facie showing, then the opposing side must be given an opportunity to file a return to the petition.' " (*People v. Romero* (1994) 8 Cal.4th 728, 740, italics omitted (*Romero*).)  In addition, the California Rules of Court applicable to petitions for habeas corpus state "The court must issue an order to show cause if the petitioner has made a prima facie showing that he or she is entitled to relief.  In doing so, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." (Cal. Rules of Court, rule 4.551(c)(1).)

A court receiving a petition for habeas corpus relief "evaluates it by asking whether, assuming the petition's factual allegations are true, the petitioner would be entitled to relief.  [Citations.]  If no prima facie case for relief is stated, the court will summarily deny the petition.  If, however, the court finds the factual allegations, taken as true, establish a prima facie case for relief, the court will issue an [order to show cause]." (*People v. Duvall* (1995) 9 Cal.4th 464, 474475.)  When reviewing a petition seeking habeas corpus relief, a court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.  (See *In re Serrano* (1995) 10 Cal.4th 447, 456 (*Serrano*)[8]; see also *In re Lawley* (2008) 42 Cal.4th 1231, 1241 [observing " '[t]he central reason for referring a habeas corpus claim for an evidentiary hearing is to obtain credibility determinations' "].)

However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."  (*Serrano*, *supra*, 10 Cal.4th at

---

[8] We recognize that, in *Serrano*, the California Supreme Court focused on petitions to which no return or traverse had been filed.  (*Serrano*, *supra*, 10 Cal.4th, at p. 456.)  Given the differences between section 1170.95 and habeas corpus procedures, examined further below, we deem this aspect of *Serrano* inapplicable to interpreting the language of section 1170.95(c).

p. 456.)  In habeas corpus, these facts refuting the allegations are often raised in the prosecution's informal response to the petition.  (See Cal. Rules of Court, rule 4.551(b).)  "Through the informal response, the custodian or real party in interest may demonstrate, by citation of legal authority and by submission of factual materials, that the claims asserted in the habeas corpus petition lack merit and that the court therefore may reject them summarily, without requiring formal pleadings (the return and traverse) or conducting an evidentiary hearing."  (*Romero*, *supra*, 8 Cal.4th at p. 742; see also *Durdines v. Superior Court* (1999) 76 Cal.App.4th 247, 253 [noting "typically . . . the People's informal response serves to fatally undermine the petition by providing the court with irrefutable evidence that the petition's allegations are factually unfounded.  In such a case, the appellate court can speedily terminate proceedings, after the minimum expenditure of time and expense"].)

Drayton agrees that habeas corpus procedures provide an appropriate guide for the trial court's assessment of the prima facie showing of entitlement to relief under section 1170.95(c).  The Attorney General, however, questions the relevance of habeas corpus procedures to section 1170.95 and asserts that habeas "is not a perfect analogue."  In particular, the Attorney General argues habeas procedures are inapposite because of the " 'heavy burden' " on habeas petitioners to show entitlement to relief and because habeas petitioners retain the burden of persuasion.

The Attorney General correctly points out the significant differences between section 1170.95 and habeas corpus procedures.  As the California Supreme Court has described, a petitioner seeking habeas corpus relief bears both a burden of pleading and proof.  "Because a habeas corpus petition is a collateral attack on a presumptively valid judgment, ' "the petitioner bears a heavy burden initially to plead sufficient grounds for relief, and then later to prove them." ' [Citation.]  Even when, as here, this court finds that a habeas corpus petition states a prima facie showing that the petitioner is entitled to relief, the petitioner must still ' "prove, by a preponderance of the evidence, facts that

establish a basis for relief on habeas corpus." ' " (*In re Champion* (2014) 58 Cal.4th 965, 1006–1007, italics omitted; see also *In re Bacigalupo* (2012) 55 Cal.4th 312, 332.)

By contrast, the petitioner under section 1170.95 bears only the burden of making the initial prima facie showings set out in section 1170.95(c). Once the trial court issues the order to show cause, the burden of proof shifts to the prosecution. At the subsequent hearing, conducted pursuant to the procedures set out in subdivision (d), the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is "ineligible for resentencing." (§ 1170.95, subd. (d)(3).) In the words of the Attorney General, because the petitioner does not bear the ultimate burden of proof under section 1170.95, "the superior court's issuance of an order to show cause [under section 1170.95(c)] is only an assessment that petitioner has met a pleading burden, not a production burden."

We agree with the Attorney General that, with respect to the overall structure of section 1170.95 and its shifting burdens, habeas corpus procedures provide an imperfect analogy to the statute. Nevertheless, with respect to the trial court's assessment of whether the petitioner has made a prima facie showing of entitlement to relief under section 1170.95(c), we conclude habeas corpus procedures are sufficiently similar to provide a reasonable construction of the meaning of the relevant language in subdivision (c). (See *Verdugo*, *supra*, 44 Cal.App.5th at p. 328.)

Using the habeas corpus procedures as a guide to the legislative intent with respect to the court's review of the " 'prima facie showing that [the petitioner] is entitled to relief' " under section 1170.95(c), we conclude that, when assessing the prima facie showing, the trial court should assume all facts stated in the section 1170.95 petition are true. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 328.) The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing. Just as in habeas corpus, if the record "contain[s]

17

facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner." (*Serrano*, *supra*, 10 Cal.4th at p. 456.) However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime).

If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95(a), then the trial court should issue an order to show cause. (§ 1170.95(c).) Once the trial court issues the order to show cause under section 1170.95(c), it must then conduct a hearing pursuant to the procedures and burden of proof set out in section 1170.95, subd. (d) unless the parties waive the hearing or the petitioner's entitlement to relief is established as a matter of law by the record. (§ 1170.95, subd. (d)(2).) Notably, following the issuance of an order to show cause, the burden of proof will shift to the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

### 3. The Trial Court Erred Under Section 1170.95(c)

The Attorney General asserts our standard of review of the trial court's order is de novo, because it involves the construction and interpretation of a statute. Drayton notes that there is no case law on the appropriate standard of review. Appellate review of petitions in similar context, such as Proposition 47, typically involves multiple standards of review. (See *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1095–1096 [" 'Where an appeal involves the interpretation of a statute . . . the issue on appeal is a legal one, which we review de novo. [Citation.] Where the trial court applies disputed facts to such a statute, we review the factual findings for substantial evidence and the application of

18

those facts to the statute de novo.' "].) Here, our analysis of the trial court's order focuses on the trial court's interpretation of section 1170.95(c), and we therefore review its order de novo.

The trial court erred under section 1170.95(c) in summarily denying Drayton's petition without issuing an order to show cause. In the first step under section 1170.95(c), Drayton made a prima facie showing of eligibility for relief. He filed a petition stating 1) he was charged with murder under a theory of felony murder; 2) he was convicted of first degree murder; and 3) he could not be convicted of first degree murder under the post-January 1, 2019 definition of murder because he was not a major participant in the underlying felony who acted with reckless indifference to human life, as described in subdivision (d) of section 190.2. (See § 1170.95(a).) There were no facts in the trial court record that, as a matter of law, refuted Drayton's assertion that he had been convicted of first-degree murder on a theory of felony murder.

Turning to the second step under section 1170.95(c)—Drayton's prima facie showing of his entitlement to relief, the district attorney conceded the truth of the first and second elements of section 1170.95(a) and contested only Drayton's assertion that he was not a major participant in the robbery who acted with reckless indifference to human life. As there had been no prior finding by a factfinder or admission by Drayton to that effect, the district attorney made arguments based on testimony at the preliminary hearing and urged the trial court to evaluate the evidence and make a credibility finding adverse to the facts asserted in Drayton's petition.

The trial court agreed with the course suggested by the prosecution. Based on facts drawn from the testimony at the preliminary hearing, the court "f[ound] that petitioner was a major participant in the underlying felony, both the burglary and the robbery." The court also found that Drayton "acted with reckless indifference to human life," which the court characterized as "blatantly apparent by his conduct, being armed

19

and his participation in this event, as well as the conduct of his co-conspirators, the other individuals."

At this stage of the petition review process, governed by section 1170.95(c), the trial court should not have engaged in this factfinding without first issuing an order to show cause and allowing the parties to present evidence at a hearing, as described in section 1170.95, subdivision (d).[9] Further, the *Banks* test, which governs the inquiry whether the defendant was a major participant in a felony necessarily requires the weighing of facts and drawing inferences.[10] (*Banks*, *supra*, 61 Cal.4th at p. 803.) The question whether Drayton acted with reckless indifference is a similarly multifaceted inquiry. (See *People v. Clark* (2016) 63 Cal.4th 522, 622.) In making an assessment of the petitioner's prima facie showing, the trial court should not have evaluated and weighed the evidence but instead should have accepted petitioner's asserted facts as true.

Drayton's petition asserted facts which, if accepted as true, fulfilled the requirements for relief listed in section 1170.95(a). Therefore, the trial court erred by not issuing an order to show cause.

---

[9] Drayton also argues that the trial court erred by considering the conduct of his coconspirators and contends its conclusion that he showed reckless indifference to human life lacked substantial evidence. In light of our reversal of the trial court's order and our remand for further proceedings, we do not address these issues.

[10] In *Banks* the California Supreme Court recounted a nonexclusive list of factors to assist in making the determination whether a defendant was a "major participant" in a felony murder, namely—"What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th. at p. 803, fn. omitted.) The court in *Banks* stated, "No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Ibid.*)

For these reasons, we reverse the trial court's order denying the petition and remand with directions to issue an order to show cause under section 1170.95(c) and hold a hearing pursuant to section 1170.95, subdivision (d). We express no opinion about Drayton's ultimate entitlement to relief following the hearing. (§ 1170.95, subd. (d)(2).)

## III. DISPOSITION

The order denying Drayton's petition to vacate his murder conviction and for resentencing is reversed. The matter is remanded to the superior court with directions to issue an order to show cause (Pen. Code, § 1170.95, subd. (c)) and hold a hearing to determine whether to vacate Drayton's murder conviction and recall his sentence and resentence him (Pen. Code, § 1170.95, subd. (d)).

_____

                      Danner, J.

WE CONCUR:

_____

Elia, Acting P.J.

_____

Bamattre-Manoukian, J.

**H046928**
*People v. Drayton*

| Trial Court: | Monterey County Superior Court, Case No.: CR16712D |
|---|---|
| Trial Judge: | Hon. Pamela L. Butler |
| Attorney for Defendant/Appellant John Lewis Drayton: | Alex N. Coolman under appointment by the Court of Appeal |
| Attorneys for Plaintiff/Respondent The People: | Xavier Becerra Attorney General of California Lance E. Winters Chief Assistant Attorney General Jeffrey M. Laurence Senior Assistant Attorney General Rene A. Chacon Supervising Deputy Attorney General Juliet B. Haley Deputy Attorney General |

**H046928**
*The People v. Drayton*